[Civ. No. 15949. Fourth Dist., Div. Two. Dec. 23, 1976.]

YELLOW CAB OF NORTHERN ORANGE COUNTY et al.,
Plaintiffs and Respondents, v.
ORANGE COUNTY TRANSIT DISTRICT et al.,
Defendants and Appellants.

**COUNSEL**

Adrian Kuyper, County Counsel, and Kennard R. Smart, Jr., Deputy County Counsel, for Defendants and Appellants.

Anastasi & Vogel, Anthony J. Anastasi and Phillip J. Nielsen for Plaintiffs and Respondents.

**OPINION**

**McDANIEL, J.**—This case was initiated by three taxicab operations in Orange County and sought prohibitory and mandatory injunctions and declaratory relief against the Orange County Transit District (hereinafter "Transit District") and the individual members of the board and

directors of Transit District. An order to show cause was issued. At the conclusion of the hearing on the matter, the trial judge ruled that Transit District would have 120 days from that date either permanently to cease and desist its Dial-A-Ride operation which generally was conducted within the boundaries of the City of La Habra and of the City of Orange, or to commence good faith negotiations for the purchase of plaintiffs' existing taxi services as contemplated by specified Public Utilities Code sections. The defendants appeal from that order. On January 19, 1976, another judge of the Orange County Superior Court issued a stay order against the injunction pending this appeal.

## Description of the Competing Operations

Plaintiffs are privately owned public utilities (taxi services) in Orange County: Yellow Cab of Northern Orange County, operating in the City of La Habra and the City of Orange, and Yellow Cab of Santa Ana, Inc., operating in the City of Orange. (A third taxi service, Yellow Cab of Newport and Costa Mesa, Inc., was not named in the judge's order, nor in the briefs.) Each of the plaintiffs had been operating in their respective areas prior to February 1973.

In February 1973, Transit District initiated a public bus service in the City of La Habra and the City of Orange known as Dial-A-Ride, a demand-responsive, door-to-door transportation service. Generally speaking, Dial-A-Ride operates in each of those cities as follows. A person may obtain the bus service in one of three ways, all of which are initiated by a phone call to the Dial-A-Ride control center. First, a person may call for the first available bus to pick him up. Second, a person may have a standing order to be picked up at the same time and place on specified days (i.e. at home at 8 a.m. to be taken to work). Third, the person may place a "time" call in advance of the time specified for the bus to arrive. By means of a two-way radio, the dispatcher informs the driver of the nearest 19-seat Dial-A-Ride bus to pick up the individual at the specified address. In the City of La Habra, the average response time (i.e., from the time the potential passenger calls the Dial-A-Ride control center to the time the bus picks him up) during peak (i.e., heavily traveled) hours is up to 45 minutes while it is 20 minutes during the "off peak" hours. The average travel time (i.e., the amount of time measured from when the passenger is picked up until he is dropped off) is 15 - 20 minutes during the peak hours, and 10 minutes during the off peak hours. In the City of Orange, the response time

during peak hours is up to 60 minutes, while it is 33 minutes during off peak hours. The average travel time is 35 - 40 minutes during peak hours and 22 minutes during off peak hours.

When the bus arrives to pick up the potential passenger, the driver waits approximately 30 seconds for the person. The driver is not allowed to leave the bus and seek the person. Rather, the driver must stay with the bus, but can honk the horn. If the person fails to appear, the bus continues on its way. The drivers are not allowed to wait longer for the potential passenger because persons already on the bus wish to be taken to their respective destinations, while other persons are waiting for the bus to pick them up. If the person meets the bus within the 30 seconds, he or she boards the vehicle and is taken wherever he or she wishes to go *within* the boundaries of the city in which he or she was picked up. The cost for this service is 50 cents per ride, 25 cents for senior citizens and the handicapped, while up to three children who are under seven years ride free when accompanied by an adult. The rider may take packages or suitcases with him or her; however, the drivers are instructed not to help persons with such items. The Dial-A-Ride programs in the City of La Habra and the City of Orange operate Monday through Saturday, 7 a.m. to 7 p.m. The programs do not operate from 7 p.m. to 7 a.m., nor on Sundays.

By contrast, the plaintiff taxi services operate 24 hours a day, 7 days a week as follows. A patron may call the taxi office with a request to be picked up then, at a specified time (time call) or have a standing order to be picked up at a specified time on specified days. A driver is dispatched to the address, and will go to the person's front door and announce his arrival. The driver will wait for the person up to three minutes without charge. If the person has packages or baggage with him or her, the driver will assist him or her. The customer is taken wherever he or she wishes to go, regardless of whether his or her destination is within, or without the city limits of the city in which he or she was picked up. The fare is based on a flat charge for the use of the vehicle and is in excess of 50 cents; plaintiff cab companies are not allowed to charge each individual occupying the cab. However, the original passenger must give his or her consent for additional persons to enter the cab and the destination of those persons must be in the same direction as the destination of the first passenger.

Typical Dial-A-Ride passengers include the elderly, the handicapped, persons under 16 who do not have a license to operate a motor vehicle,

and members of one car families. Typical passengers of the plaintiff taxi services include the elderly, the handicapped, persons under 16 who do not have a license to operate a motor vehicle, members of one car families, and persons who are in the area on business or pleasure (e.g., conventions).

According to testimony at the time of the hearing of the order to show cause, since the implementation of Dial-A-Ride, plaintiff Yellow Cab of Northern Orange County, in the City of La Habra, experienced a decline in the number of trips within that city of 69.6 percent in December 1973 and 71 percent in December 1974. In the City of Orange, there was a decline for that company in the number of trips in June 1975 of approximately 28 percent as compared to the number of trips in June 1974; there was also a decline of about 35 percent in the amount of fares. For the fiscal year ending June 30, 1974, the margin of profit for Yellow Cab of Northern Orange County was 2.6 percent, 4 percent for Yellow Cab of Santa Ana, Inc., and 5 percent for Yellow Cab of Newport and Costa Mesa, Inc.

## The Trial Court's Order

In its order granting declaratory and injunctive relief, the trial court relied on certain statutes within part 4 of division 10 of the Public Utilities Code (§§ 40000-40617) which deal solely with the Orange County Transit District.[1]

The court determined that: (1) ". . . Plaintiffs are privately owned public utilities doing business in the State of California and are *existing systems* within the meaning of Section 40221.[2] . . ." (Italics added.)

(2) Defendants failed to give plaintiffs Yellow Cab of Northern Orange County and Yellow Cab of Santa Ana, Inc. written notice, as required and prescribed in section 40222[3] of the proposed public transit system (Dial-A-Ride) which might compete with the existing system.

[1]Unless otherwise indicated, all statutes referred to in this opinion are found in the Public Utilities Code.

[2]Section 40221 provides in relevant part: "As used in this chapter: [¶] (b) 'Existing system' means any transit service or system of a publicly or privately owned public utility situated entirely within Orange County, or at least 75 percent of whose revenue vehicle miles for the preceding calendar year were operated within Orange County."

[3]Section 40222 provides: "Notwithstanding any other provision of this part, before the district may establish any transit service or system which may at any time divert, lessen,

(3) Although defendants established, maintained and operated the Dial-A-Ride program in the City of Orange and the City of La Habra, defendants failed to purchase the existing systems (plaintiff Yellow Cab of Northern Orange County operating in the City of Orange and the City of La Habra, and plaintiff Yellow Cab of Santa Ana, Inc., operating in the City of Orange) as required and prescribed in section 40222.5.[4]

The court then ordered that the defendants would have 120 days either to cease and desist the operation of Dial-A-Ride in the City of Orange or to commence good faith negotiations for the purchase of plaintiffs Yellow Cab of Northern Orange County and Yellow Cab of Santa Ana, Inc. in accordance with sections 40223 and 40223.5.[5] The court also ordered that the defendants had 120 days to cease and desist the operation of Dial-A-Ride in the City of La Habra or to commence good faith negotiations for the purchase of plaintiff Yellow Cab of Northern Orange County.

### ISSUES, DISCUSSION AND DISPOSITION

The defendants raise several issues on appeal (whether plaintiffs are an "existing system" under section 40221, subd. (b); whether plaintiff Yellow Cab of Northern Orange County is barred by laches from

or compete for the patronage or revenues of any existing system, the district shall give a written notice to the public utility which is operating the existing system. The written notice shall describe the transit service or system which the district proposes to establish and shall state the time within which the district proposes to establish such service or system."

[4]Section 40222.5 reads: "The district shall not establish the proposed service or system, or maintain and operate the service or system until it has completed the purchase of the existing system or any part thereof."

[5]Section 40223 provides: "The purchase price to be paid for the existing system, or any portion thereof to be purchased, shall be the reproduction cost new, including going concern value, at the date upon which the district commences negotiations for the purchase of the existing system, or the portion of the existing system, less depreciation, including wear, tear and obsolescence, if any. The purchase price shall not, however, in any event be less than the average annual gross revenue, less charter and contract revenue, for the preceding three calendar years of the existing system. Should the district determine that it is necessary to enter the area of transporting school pupils, then that portion of the contract revenues shall be included."

Section 40223.5 reads: "The district and the public utility operating the existing system may agree upon the purchase price or they may agree that the purchase price is to be established by arbitration and upon the method of naming arbitrators and the method of conducting such arbitration. If they do not, the purchase price may be fixed and judgment entered thereon in a suit brought either by the public utility or the district in the superior court in and for the county in which is located that portion of the existing system to be acquired by the district which has the highest value."

bringing its cause of action; whether section 40222 requires statutory interpretation; and whether sections 40222 and 40222.5 were intended by the Legislature to require defendants to purchase the plaintiffs or to terminate the Dial-A-Ride programs in the City of La Habra or the City of Orange). However, it is our considered opinion that the issue of whether plaintiffs are an *existing system* under section 40221, subdivision (b), is dispositive of the appeal, and, therefore, is the only issue which we have addressed in this opinion.

Transit District contends that plaintiffs are not "existing systems" within the meaning of section 40221, subdivision (b) because they are not a *"transit* service or system" as that term is used in section 40221, subdivision (b) and defined in section 40005[6] (italics added). Plaintiffs respond by arguing that, because Transit District did not raise this issue in the trial court, they are barred from raising it on appeal, and that "transit service or system" must be "construed in its ordinary content, meaning transportation of passengers by any means."

As already noted, the trial court determined that plaintiff taxicab companies are "existing systems" within the meaning of section 40221. However, despite the fact that section 40221, subdivision (b) defines "existing system" in part as "any transit service or system . . . ," the trial judge did not make an express finding as to whether plaintiffs were, in fact, a "transit service or system." Section 40005 defines "transit" to mean "the transportation of passengers only and their incidental baggage by means other than by chartered bus, sight-seeing bus, or any other motor vehicle *not on an individual passenger fare-paying basis.* . . ."[7] (Italics added.) Two criteria must be met before a transportation system is considered to be a transit system or service within the meaning of this statute. Those criteria are that the system or service (1) transports passengers only and their incidental baggage, and (2) is *not* a chartered bus, sightseeing bus or any other motor vehicle *not on an individual passenger fare-paying basis.* In our opinion plaintiff taxi services do not meet either criterion. We turn first to the "passengers only" requirement.

The co-owner of one of the plaintiff taxicab services testified that taxis will not only transport passengers with or without their incidental

---

[6]For the text of section 40005, see footnote 7 and the accompanying text.

[7]The remainder of section 40005 reads ". . . Nothing in this section shall be construed to prohibit the district from leasing its buses to private certified public carriers or to prohibit the district from providing schoolbus service for the transportation of pupils between their homes and schools."

baggage, but that approximately 1 percent of their business consists of delivering telegrams and packages only. Consequently, plaintiffs do not meet the requirement of transporting "passengers *only* and their incidental baggage. . . ." (Italics added.)

■ Nor do plaintiffs meet the second requirement. The question is whether or not plaintiffs operate on an individual fare-paying basis. According to the testimony of a co-owner of plaintiff Yellow Cab Company of Northern Orange County, they do not. Rather, taxi drivers of the plaintiff companies may collect only a "flat fee" for a trip regardless of the number of persons sharing the cab. As the witness testified, the reason the companies charge a flat fee rather than an individual fare to each passenger is that "[i]t is a PUC [Public Utilities Commission] regulation, the basis for which we operate a taxi. In other words, we cannot compete unfairly with Greyhound Airport Service, Town and Tour Fun Bus or other agencies. We do need additional PUC authority other than that which we have been authorized." In reaching the foregoing conclusions we noted the following additional testimony:

"[DEFENSE ATTORNEY]: Is there a PUC . . . ruling that taxicabs must have specific authority from the Public Utilities Commission in order to charge individually? Is that the ruling?

"[WITNESS]: That is correct. Different classification.

"[DEFENSE ATTORNEY]: Are you familiar with any code sections or ruling numbers or anything to that effect?

"[WITNESS]: I really don't have that information. But I know for sure if it were possible we would do it, especially between points where we do have competition in those forms, but it is expressly prohibited."

However, plaintiffs argue that if they are not a transit service or system because, under the flat rate system, all but one person ride "free," then neither is Dial-A-Ride a transit service or system because up to three children under the age of seven who are accompanied by an adult may ride the latter system free of charge. We do not agree. Everytime the taxi driver responds to a call, he must charge a flat rate, based on the distance and time it takes to take the passenger to his destination, regardless of the number of passengers in the vehicle. In contrast, the Dial-A-Ride driver must charge each passenger the 50 cent fare (25 cents for senior

citizens and the handicapped); however, up to three children under seven and accompanied by an adult ride free. Such a practice does not transform Dial-A-Ride into a flat rate transportation system. Dial-A-Ride, like many other businesses such as movie theaters and amusement parks, simply gives an adult with up to three children under seven a financial "break" on their fares. Moreover, if the adult is accompanied by more than three children under the age of seven, the Dial-A-Ride driver will charge for their fares. In contrast, if the adult, accompanied by more than three such children, used one of the plaintiff taxis, the adult would only have to pay the flat fare.

■ Plaintiffs also assert that the term "transit service or system" should not be interpreted literally. Citing section 40001 (which provides that "[u]nless the context otherwise requires, the provisions of this article govern the construction of this part"), they assert that the term must be "construed in its ordinary content, meaning transportation of passengers by any means." They argue that the Legislature clearly "did not intend to permit the [Orange County] Transit District to directly compete with a privately-owned public utility, without first having purchased that privately-owned public utility." Once again, we do not agree.

If the Legislature wanted to define transit to include transportation of passengers by any means, it could have done so. It has enacted statutes in the Public Utilities Code which so define transit for the transit districts located in the counties of Alameda (§ 24505), Contra Costa (§ 24505), and Santa Clara (§ 100012), as well as the San Francisco Bay Area Rapid Transit District (§ 28505) and the Stockton Metropolitan District (§ 50005).[8]

At the time of oral argument, plaintiffs' attorney argued that taxis were not meant by the Legislature to be included in that part of section 40005 which excludes certain forms of transportation from the definition of transit. He asserted that the definition of the phrase "any other motor vehicle not on an individual passenger fare-paying basis" was limited by the words which immediately preceded it ("by chartered bus [or] sight-seeing bus") to transportation which was similar to charter or

---

[8]By way of example, the definition of transit applicable to the Santa Clara County Transit District is "the transportation of passengers and their incidental baggage by any means." (§ 100012.) Note the omission of "only" following "transportation of passengers" and the lack of restrictions on the method of transporting the individuals.

sightseeing buses. He then argued, citing section 5353, subdivision (g),[9] that taxis are specifically excluded from charter bus groups.

██ In our opinion, the terms "chartered bus" and "sight-seeing bus" do not limit the meaning of the phrase "or any other motor vehicle not on an individual passenger fare-paying basis." The conjunction "or," along with the open ended term "any other motor vehicle," refutes counsel's position that the phrase is limited to vehicles of the chartered bus or sightseeing bus variety. ██ Furthermore, section 5353 enumerates those types of motor vehicle transportation (including taxicabs in subdivision (g)) which are not affected by the chapter in which section 5353 is located—"Charter-Party Carriers of Passengers." That chapter is concerned only with motor vehicles which have a seating capacity of more than five persons, excluding the driver (§ 5359); consequently, that chapter has no applicability to this case because of our determination that the "or any other motor vehicle . . ." phrase in section 40005 is *not* limited to chartered or sightseeing buses.

██ Because plaintiff taxicab companies, on the facts adduced, do not come within the definition of *transit* found in section 40005, they are not "existing systems" within the meaning of section 40221. Therefore, the defendants had no duty to give plaintiffs a written notice of the proposed transit system (Dial-A-Ride), or to purchase plaintiffs' taxi services before commencing the Dial-A-Ride program in the City of La Habra and the City of Orange. The resolution of this issue being dispositive of the appeal, we need not discuss the other issues presented.

Despite the foregoing discussion, we are concerned about a potential problem facing the residents of areas affected by Dial-A-Ride. Dial-A-Ride operates Monday through Saturday from 7 a.m. to 7 p.m. (Travel from 7 p.m. to 7 a.m. and on Sundays is so light that it would be uneconomical for Dial-A-Ride to operate during those hours.) Plaintiffs operate 24 hours a day, seven days a week. Testimony indicated that the taxicab business is more lucrative Monday to Saturday, 7 a.m. to 7 p.m. than in the evenings and on the weekends. It is this weekday business

---

[9]Section 5353 provides in part:
"The provisions of this chapter do not apply to:
" . . . . . . . . . . . . . . .
"(g) Taxicab transportation service licensed and regulated by a city or county, by ordinance or resolution, rendered in vehicles designed for carrying not more than eight persons excluding the driver."

which allows taxi companies to be available to transport persons during the less traveled hours of 7 p.m. to 7 a.m. and on Sundays. Plaintiffs expressed a fear that because Dial-A-Ride attracts many of the same type of people (i.e., the elderly, handicapped, school children, members of families who own one car), their profits would decline to the point where they would be unable to maintain 24 hour-a-day, 7 day-a-week service. Such a situation would be most unfortunate for those people who need transportation during the hours when Dial-A-Ride is not operating. Although regular bus service does run during the 7 p.m. - 11 p.m. time period and on Sundays, that service follows specified routes and the potential passenger must be able to get to specified pick-up points to obtain the service. Between 11 p.m. and 7 a.m., he or she must obtain his or her own transportation. If it develops that Dial-A-Ride competition forces the plaintiffs out of business, we would regret the resulting lack of public transportation during the night hours and on Sundays. However, the record and the statutes involved require that the judgment be reversed.[10]

Kaufman, Acting P. J., and Morris, J., concurred.

---

[10] In so doing we have been mindful of the axiom that hard cases make bad law. In our view the plaintiffs' remedy lies with the Legislature which is the proper body to decide the social question of whether private taxicab businesses must face the risk of publicly subsidized competition. For Orange County and five other areas of the state the Legislature has decided they must sustain such a risk. In Santa Clara County, for instance, the Legislature has decided that they should not. We see no basis for the legislative distinction.